UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

JAMES SPRUYT,

              Petitioner,

    v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security
Administration,

              Respondent.

Case No. 1:19-cv-00169-CWD

**MEMORANDUM DECISION
AND ORDER**

Petitioner has brought this matter for judicial review of Respondent's denial of his application for a period of disability and disability insurance benefits. The Court has reviewed the Petition for Review, the administrative record (AR), and the parties' memoranda. For the reasons set forth below, the Court will remand the ALJ's decision.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

On September 3, 2015, Petitioner protectively filed an application for disability insurance benefits under Title II of the Social Security Act, alleging a disability onset date of June 14, 2015. AR 16, 204 – 205. (Dkt. 11.) Petitioner's application was denied upon initial review and on reconsideration. AR 16, 89 – 102, 104 – 117. A hearing was held before Administrative Law Judge (ALJ) John Arkoosh on December 12, 2017. AR 16, 35 – 87. The ALJ heard testimony from Petitioner and a vocational expert. *Id.* On April 17, 2018, the ALJ issued a written decision finding Petitioner has not been under a disability from June 14, 2015, through the date of decision, and found Petitioner was not disabled. AR 27. The Petitioner timely requested review by the Appeals Council, which denied his request for review on April 9, 2019. AR 1 – 3, 189.

Petitioner timely appealed this final decision to the Court on May 7, 2019. (Dkt. 1.) The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g). At the time of the hearing, Petitioner was fifty-two years of age. Petitioner has a Bachelor of science degree in electronics management, and worked in various highly skilled positions in the semiconductor manufacturing industry. AR 42 – 46.

## ISSUES FOR REVIEW

A. Is the ALJ's step three finding that Petitioner's impairments did not meet or equal a listed impairment supported by substantial evidence?

B. Did the ALJ err in evaluating Petitioner's symptom testimony?

C. Did the ALJ properly evaluate the opinion of nurse practitioner Colleen

**MEMORANDUM DECISION AND ORDER - 2**

Shackelford?

D. Did the ALJ provide a germane reason for discounting the lay witness

testimony of Petitioner's spouse?

## STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal

error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874

F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*,

139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197,

229 (1938)). This requires "more than a mere scintilla" of evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin*,

759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and

evidence that does not support, the ALJ's conclusion. *Id*. The Court considers in its

review only the reasons the ALJ identified and may not affirm for a different reason. *Id.*

at 1010. Furthermore, "[l]ong-standing principles of administrative law require us to

review the ALJ's decision based on the reasoning and actual findings offered by the

ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have

been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009)

(citations omitted).

If the ALJ's decision is based on a rational interpretation of conflicting evidence,

the Court will uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533

**MEMORANDUM DECISION AND ORDER - 3**

F.3d 1155, 1165 (9th Cir. 2008). It is unnecessary for the ALJ to "discuss all evidence presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id*.

## DISCUSSION

Here, the ALJ found Petitioner has the following medically determinable, severe impairments: bipolar disorder; anxiety disorder; and depression. AR 18. Based on the limitations caused by these impairments, the ALJ assessed Petitioner as being able to perform a full range of work at all exertional levels, but with nonexertional limitations as follows: occasional interaction with co-workers, supervisors, and the public; occasional supervision; performance of simple, routine, and repetitive tasks in a work environment with only occasional production rate or pace work; and limited to work with simple, work-related decisions with few, if any, changes in the workplace. AR 21. Relying on vocational expert testimony, the ALJ found Petitioner could not perform his past relevant work, but could perform the requirements of representative occupations such as janitor, warehouse worker, and hand packager at step five[1] of the sequential evaluation process. AR 26 – 27. Accordingly, the ALJ determined at step five that Petitioner was not disabled. AR 27.

---

[1] The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920.

**MEMORANDUM DECISION AND ORDER - 4**

A.      **Step Three – Whether Petitioner's Impairments Meet or Equal a Listing**

The ALJ found that Petitioner's impairments did not meet or equal Listing 12.04 (Depressive, bipolar and related disorders). Petitioner objects to the ALJ's finding, arguing the ALJ improperly found that Petitioner does not satisfy at least two paragraph B criteria for Listing 12.04.

To qualify as disabled at step three of the sequential evaluation, a claimant must meet or exceed the criteria for one of the listed impairments in Appendix 1 to Part 404 of the regulations. 20 C.F.R. § 404.1520(d). Petitioner has the burden of proving that his impairments meet all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). If a claimant's impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination of whether he can actually perform prior work or other work. *Id*. at 532. "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan*, 493 U.S. at 532).

To meet a listing in Appendix 1 for a mental disorder, a claimant must satisfy criteria in paragraph A of the listings, which medically substantiate the presence of a mental disorder, and the criteria in paragraphs B or C, which describe the functional limitations associated with the disorder which are incompatible with the ability to work.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A.[2]

To satisfy the paragraph B criteria, Petitioner's paragraph A impairments[3] must result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning listed in paragraph B. These four areas are:

1. Understand, remember, or apply information.

2. Interact with others.

3. Concentrate, persist or maintain pace.

4. Adapt or manage oneself.

Listing 12.00(E). A mild limitation means that a claimant's ability to function independently, appropriately, effectively, and on a sustained basis in a particular area is slightly limited. 20 C.F.R. § pt. 404, subpt. P, app. 1, 12.00F.2. A moderate limitation means that a claimant's ability to function in a particular area independently, appropriately, effectively, and on a sustained basis is fair. *Id*. And a marked limitation

---

[2] The Court reviews the SSA's final decision using the rules that were in effect at the time the SSA issued the decision. Appendix 1, Part A-2, effective August 22, 2017, to March 13, 2018, covered the period of the ALJ's December 12, 2017 decision.

[3] The ALJ did not include a discussion of the paragraph A criteria in his written decision. AR 18 – 20. The ALJ does not need to explicitly consider paragraph A before addressing paragraph B, because without satisfying paragraphs B or C, Petitioner cannot meet the requirements of Listing 12.04. *See Caldwell v. Berryhill*, No. 4:18-CV-03890-JSW, 2019 WL 7212313, at *9 (N.D. Cal. Sept. 23, 2019). The Court therefore does not address the parties' arguments concerning paragraph A of Listing 12.04, and assumes, without deciding, that Petitioner satisfies the paragraph A criteria. *See Diane Michele R. v. Saul*, No. 2:19-CV-00235-RHW, 2020 WL 5351039, at *7 n.2 (E.D. Wash. Sept. 4, 2020). Nonetheless, the Court notes that Respondent's argument that the ALJ incorrectly relied upon medical documentation pre-dating Petitioner's June 2015 alleged onset date is nonsensical. The medical documentation pre-dating Petitioner's onset date precipitated Petitioner's application for disability benefits, and it is part of the record as a whole that the ALJ must consider when evaluating Petitioner's impairments.

**MEMORANDUM DECISION AND ORDER - 6**

means that a claimant's ability to function in a particular area independently, appropriately, effectively, and on a sustained basis is seriously limited. *Id.*

Petitioner argues the ALJ's determination that he had a mild limitation in adapting or in managing himself, and a moderate limitation in interacting with others, is not supported by substantial evidence, and that the evidence instead supports a finding of at least a marked limitation in both of these areas of mental functioning.

The area of adapting or managing oneself refers to the ability to regulate emotions, control behavior, and maintain well-being in a work setting. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (effective Aug. 22, 2017 to Mar. 13, 2018). Examples include adapting to changes, managing psychologically based symptoms, maintaining personal hygiene and attire appropriate to a work setting, and responding to demands. *Id.* The ALJ found that Petitioner had not shown evidence of decompensating, despite having undergone major life changes, and that, while he experienced depression, he was able to adapt without significant disruption. AR 21. The ALJ further supported the determination of mild restriction in this area with the finding that Petitioner was not regularly observed to be malodourous, unkempt, or disheveled, nor did he otherwise display indicia of an inability to manage himself. AR 21. Petitioner contends that he suffered three episodes of

**MEMORANDUM DECISION AND ORDER - 7**

decompensation in August of 2014, May of 2015, and November of 2016,[4] sufficient to find a marked limitation in adapting or managing oneself, and he criticizes the ALJ's reliance upon his outward appearance as not reflective of his mental functioning.

The area of interacting with others refers to the ability to relate to and work with supervisors, co-workers, and the public. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (effective Aug. 22, 2017 to Mar. 13, 2018). Examples include handling conflicts with others, responding to challenges, and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. *Id.* The ALJ noted that, while some mental status exams revealed anxious and irritable mood, the exams "usually reveal normal dress, behavior, appearance, and speech." AR 20 – 21; 23. The ALJ therefore determined Petitioner has a moderate limitation in this area. AR 20 – 21. Petitioner argues that substantial evidence in the record supports a marked finding in this area, relying upon evidence that Petitioner was banned from two workplaces for his behavior; other than immediate family, he could not get along with his family members; and he had a conflict with a neighbor. AR 75, 543, 556. Nurse practitioner Colleen Shackelford, Petitioner's treating provider, wrote to Petitioner's employer in June of 2015, opining that

---

[4] In August of 2014, Petitioner drove to Nevada instead of going to work. After several days spent in a dark hotel room, he voluntarily admitted himself to an inpatient psychiatric hospital. AR 448. In May of 2015, Petitioner was placed upon emergency administrative leave after writing to his supervisor that he suffered from homicidal and suicidal ideation. AR 240. *See also* AR 286 – 293. And last, in November of 2016, Petitioner decompensated after a job interview, causing his spouse to lock up the guns in their home. AR 711 – 709.

**MEMORANDUM DECISION AND ORDER - 8**

Petitioner was a potential risk to other employees if exposed to stress. AR 536, 862.[5]

The Court finds that the ALJ's determination that Petitioner's impairments caused a mild limitation in adapting or managing himself and a moderate limitation in interacting with others is not supported by substantial evidence. First, with respect to adapting or managing oneself, the ALJ did not discuss Petitioner's ability to adapt or manage his psychologically based symptoms in the workplace, which the ALJ is directed to do. There is evidence in the record that Petitioner was unable to hold a job, and he was terminated from his most recent position after a psychologically based outburst. The ALJ did not include this evidence in his discussion of the paragraph B criteria. And, it is unclear how the ability to dress, bathe, and groom oneself appropriately supports adequately a finding of mild limitation in this area in light of other evidence that stress, specifically stress experienced in a work setting, caused a significant increase in Petitioner's psychologically based symptoms.

Second, with respect to interacting with others, the ALJ's determination fails to account for the evidence in the record documented by numerous mental health care

---

[5] Colleen Shackelford, NP-C, was Petitioner's treating provider over the course of several years. On June 1, 2015, she provided Petitioner's employer with an updated diagnosis and prognosis of Petitioner's mental health condition. She indicated Petitioner currently suffered from intermittent homicidal and suicidal ideations, and that he was at that time unfit for performance of his essential job functions and posed a potential risk to other employees. AR 536. She indicated that he had not been stabilized yet on medication. *Id.* In March of 2017, Shackelford was of the opinion that Petitioner continued to be a risk to himself or co-workers if exposed to stress. AR 862.

**MEMORANDUM DECISION AND ORDER - 9**

providers over the course of several years[6] that Petitioner suffered from bipolar disorder, anxiety, and depression. It is unclear how mental status examination findings of anxious and irritable mood upon interacting with others are tempered by observations of normal dress and appearance.

As an example, on March 2, 2017, Colleen Shackelford, NP, indicated that Petitioner's psychological examination results revealed Petitioner to be in no acute distress, with adequate grooming and normal eye contact, and that he exhibited a pleasant, nearly euphoric mood with rapid and "not fluent speech." AR 862 – 863. However, based upon Petitioner's recent history, which included reports of road rage, Shackelford held the opinion that Petitioner continued to present a risk to himself and others. She continued his psychotropic medications, stressed the need for continued counseling, and considered his prognosis to be "fair, with adequate medication management he may be able to return to a part time job but of less stressful environment." AR 862 – 863. In other words, one can be suitably dressed, make eye contact, and be observed to be in no acute distress, but still be unable to appropriately interact with others in the work setting. The ALJ cannot rely upon one example in the regulations to the exclusion of others when there is evidence in the record of impaired functioning to the degree that Petitioner was considered by his treating provider to

---

[6] Medical evidence in the record begins with mental health treatment records from October 13, 2010, through November 14, 2017.

**MEMORANDUM DECISION AND ORDER - 10**

present a danger to himself and others.[7]

The Court therefore finds the ALJ's determination at step three is not supported by substantial evidence in the record, and the ALJ erred with respect to his findings. The ALJ must reconcile the conflicting evidence with an eye toward evaluating Petitioner's ability to function in a work setting.

## B.    Symptom Testimony

The ALJ engages in a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Trevizo*, 871 F.3d at 678 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014); 20 C.F.R. § 404.1529 (Mar. 27, 2017)). When doing so, "the claimant need not show that [his or] her impairment could reasonably be expected to cause the severity of the symptom [he or] she has alleged; [he or] she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may discredit the claimant's testimony about the severity of his or

---

[7] Respondent's attempt in briefing to point out other evidence in the record, such as Petitioner's ability to attend church and interact with others in such a setting, (*see* Resp. Brief at 8, Dkt. 14), invites the Court to rehabilitate the ALJ's findings with post hoc rationalizations, which it cannot do.

**MEMORANDUM DECISION AND ORDER - 11**

her symptoms by offering specific, clear and convincing reasons for doing so. *Trevizo*, 871 F.3d at 678; *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). It is "not sufficient for the ALJ to make only general findings; he [or she] must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). These reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 345, at 345-46 (9th Cir. 1991)).

When evaluating the intensity and persistence of symptoms, the ALJ must consider all of the evidence in the record. *See* SSR 16-3p (March 16, 2016), 2016 WL 1119029 at *1-2.[8] The ALJ is directed to examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that

---

[8] The Commissioner superseded SSR 96-7p governing the assessment of a claimant's "credibility" with SSR 16-3p, which eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to evaluate the record as a whole. *Trevizo*, 871 F.3d at 679 n.5.

MEMORANDUM DECISION AND ORDER - 12

precipitate and aggravate symptoms, medications and treatments used, and other methods

used to alleviate symptoms; (2) medical source opinions, statements, and medical reports

regarding the claimant's history, treatment, responses to treatment, prior work record,

efforts to work, daily activities, and other information concerning the intensity,

persistence, and limiting effects of an individual's symptoms; and (3) non-medical source

statements, considering how consistent those statements are with the claimant's

statements about his or her symptoms and other evidence in the file. *See id*. at *6-7.

The ALJ's decision may be upheld even if not all of the ALJ's reasons for

discrediting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Security

Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, make an

adverse finding "solely because" the claimant's symptom testimony "is not substantiated

affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880,

883 (9th Cir. 2006). Rather, an ALJ may consider the lack of corroborating objective

medical evidence as one factor in "determining the severity of the claimant's pain" or

other symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). But, the ALJ

may not reject subjective pain or other symptom testimony merely because it was not

fully corroborated by objective medical evidence. *Robbins,* 466 F.3d at 883.

The ALJ found that Petitioner's medically determinable impairments could

reasonably be expected to cause the alleged symptoms, but that Petitioner's statements

concerning the intensity, persistence, and limiting effects of these symptoms were not

consistent with the evidence. AR 22. The ALJ cited three reasons for discrediting

**MEMORANDUM DECISION AND ORDER - 13**

Petitioner's symptom testimony.

First, the ALJ noted Petitioner has not been psychiatrically hospitalized since his onset date of June 14, 2015. AR 23. In support of his conclusion, the ALJ cited treatment notes that recorded Petitioner's reports of improvement with medication and counseling after ceasing work. AR 23. He specifically cited to examples in June of 2015, April of 2016, December of 2016, January of 2017, and April of 2017. AR 23. However, omitted from this discussion are several instances where Petitioner reported disturbing behavior between periods of noted improvement.

For example, on June 1, 2015, Petitioner reported bouts of unstable and irrational thoughts due to stress at work, and admitted to plans to "kill [his] boss." AR 471.[9] On March 16, 2016, Petitioner reported to his treating provider, Rachel Jessen, LCSW, that his mood was more depressed after having applied for a job and being rejected. AR 556. Jessen observed signs of anxiety, mild depression, and depressed thought content. On October 31, 2016, Jessen observed Petitioner to be anxious, agitated, and paranoid, to the extent that she called Petitioner's wife to lock up Petitioner's guns. AR 709. That same

---

[9] The ALJ's reference at AR 23 to the progress note in June of 2015 is to a progress note dated June 11, 2015, shortly after the progress note referenced above from June 1, 2015. AR 23, 740. Even the progress note referenced by the ALJ contains conflicting evidence. The provider's notes summarizing her examination findings indicate Petitioner presented as "calm, friendly, attentive" and relaxed, and "mood presents as normal." However, Petitioner describes to his treating provider that he "wrote some pretty nasty grams" to his sister and brother, thought he might "beat my brother in law to a pulp," and wrote a letter to his boss that he "could have done anything there…I was headed for a breakdown." AR 740. Petitioner's treatment provider indicated Petitioner was experiencing "severe anxiety or panic," and exhibited "impaired impulse control." AR 741.

**MEMORANDUM DECISION AND ORDER - 14**

day, Jeffery Johnson, PA-C, observed Petitioner to be irritable, tense, with signs of anxiety. AR 711. On December 1, 2016, Jessen observed that Petitioner was "near tears with anxiety," with depressed thought content and signs of anxiety. AR 706. On March 30, 2017, emergency department records indicate Petitioner reported suffering a "panic attack," with acute onset of shortness of breath. AR 780. Petitioner was observed to be repeating himself and talking to himself. AR 780.

Second, the ALJ rejected Petitioner's testimony because he found it inconsistent with mental status exam findings that revealed no abnormalities and reflected appropriate dress, friendly demeanor, calm presentation, normal thought processes, and appropriate affect and speech. AR 23. However, these observations of Petitioner's outward appearance and cognitive functioning during medication management appointments and therapy sessions do not contradict Petitioner's reported symptoms of bipolar depression and anxiety. The ALJ pointed to several portions of the treatment notes that describe Petitioner as friendly, calm, and on occasion, presenting with an euthymic mood. AR 23. However, the treatment records must be viewed in light of the overall diagnostic record. *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *Ryan v. Comm'r of Social Sec.*, 528 F.3d 1194, 1200–01 (9th Cir. 2008). When read as a whole, the treatment notes do not undermine Petitioner's testimony.

Rather, treatment notes consistently reveal that, despite some occasional signs of improvement, Petitioner continued to suffer bouts of extreme anxiety, irritability, and depression, especially when exposed to stress, such as a job interview; and conflict – for

**MEMORANDUM DECISION AND ORDER - 15**

example, his dispute with his neighbor and reports of road rage. The ALJ's reliance upon treatment providers' observations about certain cognitive functions is therefore misplaced; Petitioner testified that anxiety and bipolar depression – not specific cognitive impairments – caused him difficulty. Further, the ALJ improperly cherry-picked treatment providers' characterizations of Petitioner's rapport and demeanor instead of considering these factors in the context of Petitioner's diagnoses and observations of impairment. Treatment providers frequently observed that Petitioner appeared anxious, irritable, and depressed, and he was diagnosed with bipolar disorder, anxiety disorder, and depression.

Third, the ALJ rejected Petitioner's testimony because he found Petitioner's daily activities are not as limited as Petitioner described. Specifically, the ALJ stated that Petitioner described activities that "appear inconsistent with the presence of disabling limitations." AR 24. The ALJ noted the following examples: Petitioner's testimony that he was keeping busy with "various projects;" was getting a lot of exercise; was involved with his church community; and was enjoying riding his four-wheeler around his

**MEMORANDUM DECISION AND ORDER - 16**

property. *Id*.[10] Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Batson v. Comm'r of Soc. Security Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). But here, the activities cited by the ALJ do not contradict Petitioner's testimony.

Daily activities may be "grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical [or mental] functions that are transferable to a work setting.'" *Orn*, 495 F.3d at 639 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). There is no indication here that the limited activities Petitioner engaged in either comprised a "substantial" portion of Petitioner's day, or were "transferrable" to a work environment when the Court considers Petitioner's psychiatric symptoms surfaced upon interacting with others in a work setting. *Id*.; *see also Smolen*, 80 F.3d at 1284 n. 7 (recognizing that "many home activities may not be easily transferrable to a work environment").

---

[10] The ALJ cited two additional reasons in support of his determination that Petitioner's daily activities do not support a finding of extreme limitation. The first reason – that Petitioner's daily activities cannot be "objectively verified with any reasonable degree of certainty" – is not a legally sufficient reason for discrediting symptom testimony. *Scales v. Colvin*, No. 16-CV-1107-LAB-BGS, 2017 WL 3021043, at *17 (S.D. Cal. July 14, 2017) (citing cases). The ALJ is required to rely upon the evidence of record. Here, he had both Petitioner's testimony and the testimony of Petitioner's spouse. The second reason – that it was difficult to attribute the degree of limitation to Petitioner's medical condition as opposed to other reasons, in view of the relatively weak medical evidence – is also not a legally sufficient reason for discrediting symptom testimony, as the ALJ provided nothing more than a vague, conclusory statement. *Id.* As explained, the ALJ must evaluate the record as a whole, and not isolate specific portions to the exclusion of others. Respondent did not defend the ALJ's reasoning in this regard, limiting his discussion to the inconsistencies, discussed above.

MEMORANDUM DECISION AND ORDER - 17

This is especially true in this instance where the ALJ found no physical limitations and was therefore required to assess Petitioner's mental limitations. AR 21 (finding Petitioner had the RFC to perform work at all exertional levels). Here, Petitioner's symptoms manifested themselves when he was subjected to stress at work and required to interact with others. Yet, with the exception of attending church, which Petitioner testified he currently attends once each week for two hours (and which could be undertaken without social interaction), all of the activities Petitioner described were performed alone. AR 63 – 72.

The Court therefore finds that the ALJ's credibility determination is not supported by substantial evidence in the record.

## C.   Medical Source Opinion of Colleen Shackleford, NP-C

Only physicians and certain other qualified specialists are considered "[a]cceptable medical sources." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)[11]; *see also* 20 C.F.R. § 404.1513(a). Nurse practitioners and therapists are considered "other sources." 20 C.F.R. § 404.1513(d). While their opinions must still be evaluated, 20 C.F.R. § 404.1527(c), the ALJ may "discount testimony from these 'other sources' if the ALJ 'gives reasons germane to each witness for doing so.'" *Molina*, 674 F.3d at 1111

---

[11] *Molina* was superseded by regulation, effective March 28, 2016, which eliminated the term "credibility" from its policy and clarified the evaluation of subjective symptoms is not an examination of character. Social Security Ruling 16-3p. *Sisk v. Berryhill,* 2018 WL 3328397 n. 2 (W.D. Wash. July 6, 2018). The Court employed the new policy in section B. Further, the regulations governing the evaluation of medical evidence were recently amended, effective March 27, 2017. However, the Court applies the version effective September 3, 2013, to March 26, 2017. *See* 20 C.F.R. §§ 404.1527, 404.1520c.

(quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).

Nonetheless, opinions from other sources, such as nurse practitioners, should be

evaluated pursuant to the criteria set forth in 20 C.F.R. § 404.1527(c), which include the

examining relationship; treatment relationship; length of treatment relationship; and

frequency of examination. *Revels v. Berryhill*, 874 F.3d 648, 665 (9th Cir. 2017) (citing

20 C.F.R. § 404.1527(c)(1)–(2), (f)).

Shackleford has treated Petitioner since January 14, 2013. AR 456.[12] She provided

three opinions. The first was authored on November 5, 2014, upon request from

Petitioner's employer at the time. AR 220 - 235. In her opinion, Petitioner could not

perform shift work or night shifts, and he was experiencing symptoms of high anxiety

and an inability to follow through with decision making tasks. AR 234 – 235. On June 1,

2015, Shackleford provided Petitioner's employer with an updated diagnosis and

prognosis, opining that Petitioner then suffered from intermittent homicidal and suicidal

ideations, and that Petitioner presented a "potential risk to other employees." AR 536.

And on March 2, 2017, she recorded that Petitioner's behavior was irrational and that he

continued to be easily agitated. AR 862. She opined that Petitioner continued to present a

risk to himself or co-workers if exposed to stress. *Id.*

The ALJ did not discuss Shackleford's November 2014 opinion, and as for her

---

[12] The record reflects that Petitioner's visit with Colleen Shackleford, NP, on January 14, 2013, was to establish care. Together with other providers, the record reflects Shackelford continued to provide care and psychiatric medication management through November 14, 2017. AR 856.

**MEMORANDUM DECISION AND ORDER - 19**

other opinions, he assigned them little weight because her opinions were not consistent

with the following: claimant's normal mental status examinations; Petitioner's reports of

improvement; and Petitioner's daily activities. The ALJ further dismissed the opinions on

the grounds that Shackleford's opinion Petitioner was unable to work was a

determination reserved to the Commissioner. AR 24. Petitioner contends the ALJ erred,

because the ALJ did not discuss or consider the following: Shackleford's first opinion;

the length and frequency of the treatment relationship; the record as a whole; and that

Shackleford's opinion contained more than a simple conclusion about Petitioner's

inability to work. Respondent counters that Petitioner is inviting the Court to interpret the

record, a task reserved for the ALJ.

   With respect to the ALJ's first reason, that Shackelford's opinions contradicted

treatment notes recording normal mental status examinations, such a conflict may

constitute an adequate reason to discredit the opinions of a treating physician or another

treating provider. *See Molina*, 674 F.3d at 1111–12 (recognizing that a conflict with

treatment notes is a germane reason to reject a treating physician's assistant's opinion);

*Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692–93 (9th Cir. 2009) (holding

that a conflict with treatment notes is a specific and legitimate reason to reject treating

physician's opinion). Here, however, substantial evidence does not support the ALJ's

conclusion that Shackleford's opinions were inconsistent with the treatment notes.

   As discussed above in the context of the ALJ's credibility determination, treatment

notes consistently reflect Petitioner continued to experience significant interference from

**MEMORANDUM DECISION AND ORDER - 20**

mental health symptoms which impaired his ability to engage appropriately with others. And, while it is true that treatment notes record improved mood as a result of medication, such observations must be read "in the context of the overall diagnostic picture" the provider draws. *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *cf. Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods ... are not inconsistent with disability."). The fact that a person suffering from depression or anxiety makes some improvement "does not mean that the person's impairment [] no longer seriously affect[s] [his] ability to function in a workplace." *Holohan*, 246 F.3d at 1205; *see also Ryan v. Comm'r of Social Sec.*, 528 F.3d 1194, 1200–01 (9th Cir. 2008).

Opinions which conflict with Petitioner's daily activities also may justify rejecting a treating provider's opinion. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600–02 (9th Cir. 1999) (considering an inconsistency between a treating physician's opinion and a claimant's daily activities a specific and legitimate reason to discount the treating physician's opinion). But this principle does not apply here, because a holistic review of the record does not reveal an inconsistency between the treating providers' opinions and Petitioner's daily activities, as discussed above. The record reveals that, with the exception of attending church services, Petitioner's activities consist of solitary pursuits with no social interaction, and he limits himself to low stress environments. Petitioner testified that he watches the weather channel up to six hours each day to "keep stable" and "keep things out of my mind." AR 68. There is therefore no basis in the record to support the ALJ's conclusion that Shackleford's opinions were inconsistent

**MEMORANDUM DECISION AND ORDER - 21**

with Petitioner's daily activities.

Regarding the ALJ's failure to consider Shackleford's first opinion in conjunction with the other two, the Court notes that her opinions given between 2015 and 2017 did not change with respect to Petitioner's ability to handle work related stressors and remain free from psychological symptoms that interfere with work related tasks. The ALJ failed to discuss the impact that such a lengthy treatment history may have upon the weight to give Shackleford's opinions.

Based on the above, the Court concludes the ALJ did not set forth germane reasons supported by substantial evidence in the record for assigning Shackleford's opinions, rendered over the course of a treatment relationship spanning four years, little weight. *See, e.g., Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199 (9th Cir. 2008) ("an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations.").

**D.    Lay Witness Testimony of Petitioner's Spouse**

The testimony of lay witnesses about their own observations regarding the claimant's impairments constitutes competent evidence that must be considered and evaluated by the Commissioner in the disability evaluation. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006); *Stout v. Comm'r, Social Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Such testimony cannot be discounted unless the ALJ gives reasons

that are germane to that witness. *Carmickle v. Comm'r, Social Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008); *Stout*, 454 F.3d at 1053 (citing *Dodrill v. Shalala,* 12 F.3d 915, 919 (9th Cir. 1993)); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Such reasons include conflicting medical evidence, prior inconsistent statements, or a claimant's daily activities. *Lewis*, 236 F.3d at 511–12.

In rejecting lay testimony, "the ALJ need not cite the specific record as long as 'arguably germane reasons' for dismissing the testimony are noted, even though the ALJ does 'not clearly link his determination to those reasons,' and substantial evidence supports the ALJ's decision." *Holzberg v. Astrue*, No. C09-5029BHS, 2010 WL 128391 at *11 (W.D. Wash. Jan. 11, 2010) (citing *Lewis*, 236 F.3d at 512). However, "where the ALJ's error lies in failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

The ALJ considered and rejected the statements of Petitioner's spouse, on the grounds that her observations were not consistent with the record as a whole. AR 25.[13]

---

[13] The ALJ included also the spouse's close familial relationship and financial interest as a reason to discount her opinions, as well as her lack of medical training. However, these are not legally sufficient reasons to reject lay testimony. *Gutierrez v. Colvin*, 208 F.Supp.3d 1117, 1124-25 (E.D. Cal. Sept. 26, 2016) (finding regulations specifically require consideration of "non-medical" sources, and rejecting supposed financial interest in a favorable adjudication and family bias as germane reasons for discrediting lay testimony), cited in *Sanderson v. Berryhill*, No. 1:16-CV-00242-CWD, 2017 WL 3974235, at *8 (D. Idaho Sept. 8, 2017). Respondent did not defend the ALJ's finding on these bases.

**MEMORANDUM DECISION AND ORDER - 23**

She provided written statements that Petitioner was unmotivated, could not handle money, had problems completing tasks, and had difficulty getting along with others. AR 25. The ALJ provided no discussion to support his reason for rejecting the statements or for his observations about Petitioner's spouse. Instead, a review of the record finds support for the spouse's statements. Petitioner indicated he watched the weather channel up to six hours a day, and he testified at the hearing that he performed no household chores. AR 54, 62 – 63. Further, the record contains evidence that he had difficulty getting along with others, as he was terminated from his last employment position for writing what was perceived to be a threatening letter; he reported instances of road rage to his treating provider, Colleen Shackleford, NP-C; and his daily activities consisted of solitary pursuits, as discussed above.

The Court finds the ALJ's rejection of Ms. Spruyt's written statements on the basis that they were inconsistent with the record as a whole is not a germane reason supported by substantial evidence in the record.

## CONCLUSION

Petitioner asks the Court to remand for an award of benefits on the basis of this record. However, the Court concludes the record as a whole contains ambiguities and important factual issues that require resolution. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where, as in this case, an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency."). There is some support in the record that Petitioner may function

**MEMORANDUM DECISION AND ORDER - 24**

well enough to perform an unskilled job with low stress. For example, Shackleford noted Petitioner wished to return to work, if only part time. AR 862. She concurred he may have the ability to do so. AR 863.

It is unclear from the record, however, whether Shackleford was viewing Petitioner's return to the workforce in the context of the highly skilled positions he held previously, or whether she might have a different opinion, if asked, concerning Petitioner's ability to function on a sustained, full time basis, without interruption from mental health symptoms, in a position requiring less skill. The two state agency physicians who reviewed the record on July 22, 2016, and on September 16, 2016, certainly held that view, opining that Petitioner could perform unskilled work with no frequent interaction with the public. AR 25. But, the ALJ gave these opinions only partial weight because recent evidence received after the date of their respective reviews suggested Petitioner had more difficulty interacting with others than envisioned by the state agency reviewing physicians. AR 25.

Accordingly, the Court will reverse and remand the matter to the agency, for further proceedings consistent with this decision.

**MEMORANDUM DECISION AND ORDER - 25**

## <u>ORDER</u>

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)    Petitioner's Petition for Review (Dkt. 1) is **GRANTED**.

2)    This action shall be **REMANDED** to the Commissioner for further

proceedings consistent with this opinion.

3)    This Remand shall be considered a "sentence four remand,"

consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852,

854 (9th Cir. 2002).

DATED: November 10, 2020

Honorable Candy W. Dale
United States Magistrate Judge